**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brad Blansette,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | No. CV-15-00643-PHX-NVW<br><br>**ORDER** |

Plaintiff Brad Blansette seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.　BACKGROUND**

　　**A.　Factual Background**

Plaintiff was born in November 1963. He completed two years of college, earning an associate's degree in electrical engineering technology. Plaintiff was self-employed from 1997 to 2004 and sold computer equipment. After that, he performed telemarketing and a few part-time jobs. In 2006, he suffered a brain injury in a motorcycle accident. Plaintiff worked as a sales associate at a RadioShack store from December 2008 through

July 2010, when the store closed and Plaintiff was not relocated to another store. Plaintiff experiences chronic headaches, left foot and ankle pain, fatigue, and insomnia.

### B. Procedural History

On July 13, 2011, Plaintiff applied for disability insurance benefits and supplemental security income,[1] alleging disability beginning June 26, 2006. On July 16, 2013, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. During the hearing and through counsel, Plaintiff amended his alleged onset date to July 27, 2010.

On August 16, 2013, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On April 9, 2015, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

---

[1] The ALJ's decision from which this appeal is taken denies only Plaintiff's application for disability insurance benefits and does not mention his application for supplemental security income.

- 2 -

upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2013, and that he did not engage in substantial

gainful activity from July 27, 2010, through June 30, 2013. At step two, the ALJ found that through the date last insured Plaintiff had the following severe impairments: post-concussion syndrome with headaches, status post motor vehicle accident in 2006; adjustment disorder, NOS; personality disorder NOS; cervical degenerative disc disease; and left lower extremity injury with pes planus ("flat foot"). At step three, the ALJ determined that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that through the date last insured Plaintiff:

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant was able to occasionally push and pull with the lower left extremity. He was also able to occasionally climb ramps and stairs, balance, kneel, crouch, and crawl. In addition, the claimant was able to frequently stoop, reach, handle, and finger. He should have avoided climbing ladders, ropes, and scaffolds. Further, the claimant should have avoided concentrated exposure to loud noise and hazards, including unprotected heights and moving machinery. He was limited to simple, routine tasks with occasional changes in the work setting, occasional interaction with the public and co-workers, and no fast paced, high production demands.

The ALJ further found that through the date last insured Plaintiff was unable to perform any past relevant work. At step five, the ALJ concluded that, through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and

(3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

### 2. Treating Physician Chad E. Campbell, D.O.

Plaintiff saw primary care physician Dr. Campbell on April 11, 2013, and reported chronic pain, fatigue, and "odd symptoms" that possibly were neurological in nature. Dr. Campbell's general examination findings were normal, including no clubbing, cyanosis, or edema of the extremities and normal motor strength of the upper and lower

extremities. He noted that he spent 45 minutes in conversation with Plaintiff and did not prescribe any medications. Although Dr. Campbell made a note to get Plaintiff's medical records and order lab tests, for "follow up" he wrote only "prn," and the record does not show that Plaintiff saw Dr. Campbell other than on April 11, 2013.

Dr. Campbell referred Plaintiff to a rheumatologist who saw Plaintiff in June 2013. Upon examination, the rheumatologist concluded that Plaintiff had chronic pain syndrome with somatization disorder (*i.e.*, extreme anxiety about physical symptoms), not treatable by the rheumatologist.

In July 2013 Dr. Campbell completed a Residual Functional Capacity Form. Dr. Campbell opined that in an 8-hour workday, Plaintiff could sit for 2 to 3 hours, 20 minutes at one time; stand for 1 hour, 20 minutes at one time; walk for 1 hour, 10 minutes at one time; and recline 7 hours, 20 minutes at one time. Dr. Campbell opined that Plaintiff was not capable of using either hand for repetitive grasping, pushing/pulling, or fine manipulations and was not capable of using his feet for repetitive operation of foot controls. Dr. Campbell further opined that Plaintiff's condition caused frequent severe pain, frequent severe fatigue, severe inability to deal with stress, and frequent severe cognitive problems. He reported that the medications he prescribed for Plaintiff caused drowsiness, nausea, impaired concentration, and irritability. Dr. Campbell opined that Plaintiff would miss work more than 75% of time due to his medical conditions, would need to take 5-minute breaks every 30 minutes, and would need to alternate between sitting and standing positions at will. Finally, Dr. Campbell opined that it was his medical opinion that Plaintiff had been unable to sustain any type of full-time employment since July 1, 2010.

The ALJ noted that Dr. Campbell's assessment was more restrictive than Plaintiff had alleged, relied heavily on Plaintiff's subjective report of symptoms and limitations, and was unsupported by the medical evidence of record, including Dr. Campbell's physical examination findings. As an example, the ALJ observed that Dr. Campbell

asserted Plaintiff was unable to use either hand for grasping, pushing, pulling, and fine manipulations, yet found no deficiencies or deformities upon physical examination. The ALJ did not err by not giving Dr. Campbell's opinion controlling weight and gave clear and convincing reasons for not doing so.

### 3.   Examining Psychologist Shefali Gandhi, Psy.D.

On April 9, 2012, Dr. Gandhi performed a psychological examination of Plaintiff. On intelligence testing Plaintiff demonstrated very superior verbal reasoning abilities, high average nonverbal reasoning abilities, and high average ability to sustain attention, concentrate, and exert mental control. He demonstrated superior ability in processing simple or routine visual material without making errors. Plaintiff did not demonstrate any of the symptoms characteristic of Asperger's Disorder.

Dr. Gandhi found evidence of a personality disorder, but did not have enough information to diagnose a specific personality disorder, such as narcissistic personality disorder. She noted that he demonstrated a strong tendency to be socially disinhibited at times and appeared to lack insight into how his behavior affected others. Dr. Gandhi concluded:

> Although his overall cognitive difficulties are not likely to interfere with his social and occupational functioning, his current interpersonal challenges seem to have serious functional implications. His pattern of instability of interpersonal relationships, consistent irresponsibility as indicated by repeated failure to sustain consistent work behavior, inappropriate interaction with others, and arrogant behavior and attitude may adversely affect his social and occupational functioning.

Dr. Gandhi completed a Psychological/Psychiatric Medical Source Statement. She opined that Plaintiff was able to understand and remember simple instructions and able to engage in simple, routine, repetitive tasks that were not physically demanding. Dr. Gandhi said Plaintiff was able to maintain attention and concentration throughout several hours of testing and was able to adapt to changing tasks. Dr. Gandhi commented, however, that Plaintiff had a history of unstable employment.

The ALJ gave Dr. Gandhi's opinion great weight. He expressly found that the opinion considered Plaintiff's subjective complaints and was consistent with the treatment record, objective findings, opinion evidence, and the medical evidence as a whole.

### 4. Reviewing Psychologist Christal Janssen, Ph.D.

Based on Dr. Gandhi's examination findings and opinions, Dr. Janssen opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. She further opined that Plaintiff was not significantly limited in most areas, but was moderately limited in the ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, set realistic goals or make plans independently of others, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Janssen concluded that Plaintiff appeared able to perform at least simple/repetitive unskilled work with incidental interpersonal contact and direct/concrete supervision.

Plaintiff contends that the vocational expert was given a hypothetical with the limitations opined by Dr. Janssen, and the vocational expert testified that there would be no work available with those limitations. However, Plaintiff's counsel imposed a condition on the hypothetical that was not included in Dr. Janssen's or Dr. Gandhi's opinions. Plaintiff asked the vocational expert to assume not only that Plaintiff had the moderate limitations identified by Dr. Janssen, but also to assume that "all those moderate limitations represented that up to 1/3 of the day the individual would suffer from these limitations." With the assumption that the moderate limitations would interfere with Plaintiff's performance as much as 1/3 of the workday, the vocational

expert opined there would be no work available. Even if the ALJ gave "great weight" to Dr. Gandhi's opinion and believed that Dr. Janssen's opinion appropriately converted Dr. Gandhi's opinion to certain moderate limitations, the ALJ did not err by disregarding Plaintiff's counsel's hypothetical that assumed these moderate limitations would interfere with Plaintiff's work up to 1/3 of the day.

### B. The ALJ Did Not Err by Failing to Consider Grid Rule 201.14.

Grid Rule 201.14 of the Medical-Vocational Guidelines directs a finding of disabled for an individual who is 45-49 years old, limited to sedentary work, and does not have transferable skills. Plaintiff contends that in determining whether Plaintiff was able to perform work other than past relevant work, the ALJ should have considered Plaintiff as an individual 50-54 years old because at the time of the hearing he was 49½ years old and should have considered his residual functional capacity as sedentary because it did not include the full range of light work.

Age is a vocational factor considered in deciding whether a claimant can make the adjustment to other work. If a claimant is younger than 50 years old, it is generally assumed that age will not seriously affect the claimant's ability to adjust to other work. 20 C.F.R. § 404.1563(c). However, if the claimant is "within a few days to a few months of reaching an older age category," and using the older age category would result in a determination that the claimant is disabled, the ALJ will consider whether to use the older age category after evaluating the overall impact of all the factors. 20 C.F.R. § 404.1563(b). For the purpose of deciding whether a claimant is entitled to disability insurance benefits,[2] the oldest age to be considered is the claimant's age at the date last insured. SSR 83-10. On June 30, 2013, the date Plaintiff was last insured, Plaintiff was 49 years old. Moreover, he was more than 4 months from becoming 50 years old.

---

[2] This appeal challenges only the ALJ's decision denying Plaintiff's application for disability insurance benefits. Any issues regarding Plaintiff's application for supplemental security income are not before the Court.

- 9 -

The Medical-Vocational Guidelines provide rules for deciding whether a claimant is capable of performing other work based on findings of fact regarding the claimant's age, education, and work experience in combination with his exertional residual functional capacity, *i.e.*, maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work. SSR 83-10. Where one or more of the criteria of a rule are not met, no decision is directed, and the rules provide guidance only in conjunction with the definitions and discussions in the text of the Social Security regulations. *Id.* "Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).

This is not the case where the claimant's exertional capacity falls between the sedentary and light levels. The ALJ's capacity findings are consistent with light work in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling, except for only occasional pushing and pulling with the lower left extremity. Plaintiff's postural, environmental, and mental limitations erode the unskilled light occupational base, but they do not mean that he is capable of performing the full range of sedentary work. Therefore, Grid Rule 201.14 does not apply, and it was appropriate for the ALJ to rely on the vocational expert's testimony regarding the existence of jobs in the national economy[3] for an individual with Plaintiff's age, education, work experience, and residual functional capacity.

### C.     Consideration of New Evidence

Upon judicial review, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is

---

[3] Jobs existing "in the national economy" means either in the region where the claimant lives or in several regions in the country. 20 C.F.R. § 404.1560(c)(1).

- 10 -

new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  On October 23, 2015, Plaintiff requested the Court to consider updated medical information regarding a diagnosis of neuropathy obtained in August 2015.  (Doc. 16.)  Plaintiff believes the neuropathy was caused by an antibiotic he received in June 2006.

The medical records Plaintiff submitted to obtain Social Security disability insurance benefits show that he reported symptoms of neuropathy in addition to chronic severe headaches, left lower extremity pain, fatigue, and insomnia.  The records include neurological examinations with no abnormal results.  Further, Plaintiff never claimed that neuropathy prevented him from working.  In his application for disability insurance benefits in this case, Plaintiff claimed that his ability to work was limited by brain injury, Asperger's syndrome, pain and joint issues in both ankles, continuous headaches, and emotional instability.  Plaintiff may have new information regarding the cause of his now-diagnosed neuropathy, but the cause of any medical condition is not material to the determination of whether before June 30, 2013, he was capable of performing work.  Substantial evidence in the record supports the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time from July 27, 2010, through June 30, 2013.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 25th day of January, 2016.

Neil V. Wake
United States District Judge